A. S. CLEGHORN *vs.* J. W. AUSTIN AND T. C. HEUCK, AS-SIGNEES OF JOHN ROSS, BANKRUPT.

A MORTGAGE made by an INSOLVENT, under CIVIL CODE, SECTIONS 962 AND 968, to a creditor aware of the insolvency, is VOID.

Per DAVIS, J.

This is an action of trover to recover the sum of $5,139 19-100 and interest from the defendants, assignees of one John Ross, lately a trader at Wailuku, Maui, said amount being for divers goods, wares, and merchandise, lately owned by Ross, and which it is alleged were duly assigned and made over to said plaintiff by Ross before his bankruptcy, for the purpose of securing to plaintiff a certain debt of the

* The office of First Associate Justice was vacant from March 12th, 1867, to September 30th, 1868.

above amount by a deed of mortgage, made on the 23d of October, 1866, and to which is annexed a schedule of all the property so assigned. The complaint avers, that the defendants have taken and converted all the property, made over to plaintiff by the said mortgage.

By their answer, the defendants after admitting that they are the assignees of Ross, traverse the plaintiff's allegation of having taken and converted any property, which was formerly of John Ross, but aver that the legal title to all the property described is, and since the bankruptcy of said Ross, has been, in themselves as assignees in bankruptcy, although the form of a mortgage may have been gone through with which the defendants do not admit, but require the complainant to prove.

The issue of the case, as the Court understands it, turns upon the validity of the mortgage ; if it be held good, the plaintiff prevails, otherwise, the property mortgaged falls into the general fund for distribution among all the creditors of the bankrupt, and as we understand it, has been sold by the assignees ; its avails ($5,112 39) are now held by them, awaiting the decision in this action.

It was contended by the learned counsel for the defendants, that at the date of the execution of the mortgage, Ross was insolvent, his debts being greater than a fair valuation of all his property could amount to.

Such mortgage could give neither legal or equitable rights to creditors. It was technically fraudulent—void, because upon a trust, a trust which was not observed.

It was contended by the learned counsel for plaintiff, that if any act committed by Ross was relied on, *to invalidate the conveyance, it should be shown to be such an act as upon which a petition of bankruptcy could have been sustained.* It was argued that no such act had been proved, and that plaintiff was entitled to the benefit of his diligence.

To decide the validity of the mortgage, it becomes neces-

sary to ascertain upon the facts presented, whether any act amounting to bankruptcy within the statute, had been committed by Ross at the time of the execution of the mortgage, the 23d of October, 1866. He was not admitted to bankruptcy till the 8th of December following.

It appears from the testimony that at the time of the execution of the mortgage to plaintiff, Ross was owing ten or $11,000, most of which was overdue. According to Mr. D. C. Bates, he had never owed Walker, Allen & Co. less than $3,000, while that firm continued in business; that there had been *one steady pressure to reduce it to that amount.* A very large sum had been standing for five years due first to Aldrich, Walker & Co., and subsequently to the successors of that concern. Besides the amount due plaintiff, he owed several other merchants in Honolulu, various amounts. The mortgage to plaintiff, with a comparatively minor exception covered his whole estate, and according to the schedule made out by plaintiff's agent, is much less than the gross sum of his indebtedness.

Ross was reluctant to executing this mortgage at first, but signed it on being assured that it would relieve him from future embarrassment, and would be the means of his going on with his business, and that he would be enabled to make payments on account among his different creditors, as had been his usual custom, and it was only then that he consented; the plaintiff's agent and Ross not knowing at the time the legal effect of the instrument.

He was evidently pressed to give the security demanded, as Mr. Smithies says (p. 22 Testimony) that he showed him, that if he did not do it, he, Smithies, should do something worse. Without recapitulating the testimony, the impression left upon our mind is, that Ross had been doing business for a length of time, burdened with heavy debts, and which his creditors had suffered to lie over, so long as he could make them partial payments on account, and so long as no

extraordinary pressure was exerted upon him by any single creditor.

But it is manifest that plaintiff's agent at the time of obtaining the security, was intimately acquainted with the state of his affairs, and endeavored to obtain all the security he could for his employer.

Under all the circumstances, then, is the transaction such, as by our statute, the Court can pronounce to be valid.

By the English authorities, under their system of bankruptcy, which have been cited by plaintiff's counsel, it is held that, in order to invalidate the security, it must be done in contemplation of bankruptcy, and voluntarily. He may be insolvent, and yet not contemplate bankruptcy. In the case of Morgan et al., assignees, *vs.* Brundrett, [5 Barnewall & Adolphus, p. 294,] the bankrupt expected to pay his creditors in full. See also Yeates *vs.* Groves, [1 Vesey Jr., p. 281.] In Dixon et al., assignees of Battier *vs.* Baldwen, et al., [5 East. Rep. p. 175,] it was held that until an act of bankruptcy the *Jus disponendi* remains with the trader, unless he exercise it by way of preference. The creditor must not have received notice, actual or constructive, of any act of bankruptcy previously committed by such bankrupt.

Now, what is an act of bankruptcy? The rule which has been applied, as derived from the Hawaiian statute then in force, and not differing from the present law, (Code of 1859), was held by this Court, in Fallon *vs.* Robinson and Walker, assignees, [2 Haw. Rep., p. 227,] to be: "Whenever any person, owing debts to the amount of two thousand dollars, shall refuse or fail to make payment of his just demands, for ten days after the same shall have matured and been presented for payment to him or his agent, he has *failed*, within the meaning of the law," etc.

By Section 962 of the Civil Code, there are four requisites for a case like the present, by which a person may be

declared bankrupt: first, he must be owing debts to the amount of two thousand dollars; secondly, he must have refused or failed to pay some just demand for ten days after maturity; thirdly, it must have been presented for payment; fourthly, it must have been a demand amounting to four hundred dollars by any one creditor, or if by any two or more, the sum of all the debts must be one thousand dollars. It may be true, as observed in his argument by the learned plaintiff's counsel, that the law is stringent. But if the case at bar falls within its provisions, the Court has no discretion. We are of opinion that it does.

By Section 978, Civil Code, every assignment, conveyance or transfer of property made by the bankrupt, after he shall have become insolvent, or committed an act of bankruptcy, except upon a good consideration to a *bona fide* purchaser having no notice of such insolvency or bankruptcy, shall be void. Plaintiff's whole assets, real and personal, including $2,000 debts due him, the full amount of which, it is hardly to be supposed could be realized, did not cover, by considerable, the amount of his liabilities. He could scarcely approximate to a satisfaction of his debts with the most judicious disposition of his affairs, though Ross, as often happens with parties in failing circumstances, thought he would be able to pay all, if he had time. He had failed to meet a large debt owed to Walker, Allen & Co., which had been overdue, and pressed for payment, for a long time previous to the execution of the mortgage, and which Smithies appeared to know well, as it was the main cause for the vigilance in obtaining the security.

And such being the case, the failure to meet this single debt, pressed for payment as it had been, is an act upon which a petition of bankruptcy would have been sustained, because there were other large debts besides it. But it is argued by defendants' counsel to be a fraud. We are not of opinion, that fraud in the common meaning of the word,

A. S. Cleghorn *v.* J. W. Austin and T. C. Heuck, Assignees, &c.

was intended by plaintiff or his agent. But Ross, who appears to be an illiterate Portuguese, evidently executed the instrument under a different idea of its effect upon his subsequent business status, than it turns out to be; Smithies himself misunderstood it, for at page 36 of the record, he says: "After return, learned that the legal effect of the instrument was different from what we supposed in Wailuku, both parties."

If so, Ross was prevailed upon to do what neither his adviser or himself intended. A Court of Equity might perhaps vacate the mortgage for such reasons. But we think the case sufficiently within the statute and the interpretation of it, as made by the Court in the case cited from the 2d Haw. Reports, to believe, as is there said, that the *scienter* which invalidates such a conveyance has been brought home to the mortgagee, and that, therefore, in justice to other creditors, the mortgage must be declared void. Costs to be paid by plaintiff.

John Montgomery and R. H. Stanley, Esquires, for plaintiff. Hon. S. H. Phillips, for defendants.

Honolulu, May 13th, 1867.